## CHAMPLIN v. UNITED STATES.

(District Court, D. Rhode Island. March 22, 1924.)

No. 1541.

1. Sales ⬤⟹441(2)—Evidence held to sustain buyer's requested finding of fact relating to warranty of yarn sold.

In an action against the United States under Tucker Act (Comp. St. § 991, par. 20, and section 1575), evidence *held* to authorize plaintiff's requested finding of fact that, prior to a sale of yarn to plaintiff, defendant warranted it to be a commercial article, reasonably fit for the purpose for which it was made.

2. Sales ⬤⟹441(3)—Evidence held not to show that yarn did not correspond with warranty.

Evidence *held* insufficient to show whether plaintiff's loss through acceptance of the yarn was due to market conditions in which there was no demand for the yarn for manufacturing purposes, or was due to imperfections in the yarn.

3. Sales ⬤⟹285(2)—Buyer held not to have given notice of claim for breach of warranty within reasonable time.

Where the goods were delivered on June 7, 1920, buyer was fully informed of the facts not later than October 4, 1921, but failed to give seller notice of any claim for breach of warranty until May 19, 1922, the notice was not given within a reasonable time as required by Uniform Sales Act, § 49, in force both in Rhode Island (Gen. Laws 1909, c. 263, § 9) and in New York (Personal Property Law, § 130), where the sale was made.

At law. Action by Arthur D. Champlin against the United States. Judgment for defendant.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Malcom D. Champlin, of Providence, R. I., for plaintiff
Harold A. Andrews, Asst. U. S. Atty., of Providence, R. I.

BROWN, District Judge. This is a petition under the "Tucker Act." See Act March 3, 1911, 36 Stat. 1093 (Comp. St. § 991, par. 20) : Act March 3, 1887 §.5, 24 Stat. 506 (Comp. St. § 1575).

The plaintiff claims damages for breach of warranty of quality of 10,874'pounds of No. 80, single comb, Sea Island, slashed yarn, bought and paid for by him at $1.35 per pound. The first question in dispute is as to the character of the warranty. ·

[1] The plaintiff requests the following finding of fact:

"(3) That prior to selling said yarn to the plaintiff, the defendant, by its duly authorized agent, warranted said yarn to be a commercial article and reasonably fit for the purpose for, which it was made."

The ·defendant's request on this point is:

"(5) That the defendant warranted that the yarn could be used commercially if rehandled and the sley reduced."

The finding requested by the plaintiff is supported by the testimony of Frank W. Weeks, the authorized selling agent. The defendant's request for finding seems to be based merely upon testimony of Joseph F. Kivlin, who was an assistant of Mr. Weeks, the selling agent.

Mr. Kivlin testified that the yarn had been listed by the government as scrap; that he went to New Bedford to inspect the yarn and found it all on hand in apparently good condition; that he interviewed several yarn men in New Bedford and, after talks with them and with men at the mill, reported that the yarn was in excellent condition and could be utilized if rehandled and the sley reduced. He testified that he told the plaintiff, in effect, that it was the opinion of everybody that the yarn could be used if rehandled and the sley (i. e. the number of ends in the warp) reduced.

Some confusion is introduced in the case by failing to distinguish between the questions of marketability and of quality. Mr. Stanton, treasurer of the Acushnet Mill, where the yarn was made, testified, when asked if he would have attempted to weave the yarn without reducing the sley:

"No; I should not have attempted it. At that time the market was flooded with balloon cloth, and I should not have made any more."

It is evident that Mr. Kivlin, in seeking for customers, was interested in finding other uses for the yarn than the manufacture of balloon cloth. A statement made by him that the yarn could be utilized, if rehandled and the sley reduced, might be interpreted as having reference to the market demand rather than to the quality of the yarn. We would hardly be justified in inferring that a statement that the yarn could be used if rehandled was intended as any disparagement of the quality of the yarn or of its suitability for weaving into balloon cloth.

The plaintiff testified that he had dealt largely in balloon cloth and knew of a great number of purposes for which a high-count balloon cloth could be used. It seems unlikely that the plaintiff, who is an

experienced dealer in cotton yarns, should have relied upon Mr. Kivlin for information as to the uses for the yarn, or as to the commercial demand for any particular product of such yarn, though it is probable that he did rely upon information that it was in excellent condition.

Mr. Kivlin reported to his superior that the yarn was in excellent condition, and, according to the testimony of Mr. Weeks, negotiations were carried on with a number of customers on the basis that the yarn was a commercial article. He testified that there were at least five bidders, one of whom, a very experienced manufacturer, bid within 5 cents of the plaintiff's bid.

In making the contract, the United States was represented by Mr. Weeks, and the nature of the warranty must be determined from his testimony and that of Mr. Champlin, who are in practical agreement. Mr. Kivlin's testimony did not limit the warranty nor justify a granting of the defendant's request for a finding on this point.

The plaintiff's request for a finding on this point as above set forth is granted.

[2] The next question is as to the sufficiency of plaintiff's evidence to show that the yarn did not in fact correspond with the warranty. Evidence of the failure of the plaintiff to find a customer for the yarn is of slight weight. It shows that it was not wanted, but does not show that this was because of any defect in quality.

There is evidence that the market was flooded with balloon cloth, that there was no demand for the yarn for this purpose, and that customers were not disposed to purchase it for other purposes. There is no substantial evidence that they declined to buy it because it was in quality unsuitable for the manufacture of balloon cloth or any other cloth. The only evidence of consequence that is offered by the plaintiff as to the quality of the yarn and its suitability for manufacture is evidence as to his unsuccessful attempts to have the yarn manufactured into cloth. The first attempt was by sending a beam of yarn to the Nield Mill in New Bedford on October 18, 1920; a second attempt was made by sending nine beams to the Taber Mill at New Bedford on March 25, 1921, with instructions to manufacture it into cloth. The testimony of the superintendent of that mill is quite detailed. The manufacture was under his direct observation, and his testimony is the principal support of the plaintiff's case.

Mr. James A. Sullivan, superintendent of the Taber Mill, stated that the yarn was poor yarn and "very poor preparation," that the yarn was weak, and in the dressing of the yarn there were places with no sizing on them. He testified that the cloth produced was very poor quality of cloth and caused much trouble among the weavers; that with proper yarn and proper sizing a weaver can run three looms in a six-loom set without any trouble; that with this yarn one weaver had all he could do to take care of one 'oom; that the weaving cost of the yarn would be more than the price of the cloth. He testified that in his opinion the yarn for any kind of weaving is impractical and is worth only 15 or 20 cents per pound for waste.

There was corroborating testimony from plaintiff's witness, Frederick B. Macy. There was also corroboration in the testimony of defend-

ant's witness, Charles H. Huggins, a textile engineer, who had practical experience with this yarn at the Nashawena Mills, New Bedford. He testifies as to trouble in weaving the yarn, and that they got about 60 per cent. out of the theoretic production of 100 per cent., which made, the weaving cost pretty high.

There is also testimony as to the character of the yarn from Mr. John A. Swanson, the agent of the Crompton Mills, Crompton, R. I., that he wove 6 or 7 yards of cloth from the yarn, which took one weaver 15 hours; that with perfect yarn the product should have been 20 or 21 yards; that the troubles were breakage of the yarn in the loom. He testified that the price of the cloth made of such yarn should be 30 cents, whereas the weaving of the cloth would cost about $1 per yard for direct labor only. He testified that the yarn was waste. The value of his testimony is seriously affected by the fact that the experiment was made shortly before the trial and more than three years after the delivery of the yarn. The question of deterioration was raised, but the preponderance of evidence on that point seems to be that the yarn had been properly kept and had not deteriorated from its original condition.

The principal evidence for the defendant as to the quality of the yarn is from Mr. Stanton, treasurer of the Acushnet Mills, which made the yarn. He testified that the yarn was good yarn when it left his establishment, and that a considerable portion of it had been woven into cloth.

Mr. Stanton was a most unsatisfactory witness, and seemed disposed to avoid giving any help to either side.

There was evidence as to possible modes of utilizing the yarn by rewinding it, rehandling it, and by removing the sizing and resizing it. There is substantial doubt whether it was practical to so use the yarn at a profit and as to whether new defects would not arise in the process of rehandling.

The plaintiff, of course, took the risk that he might not be able to find a market for yarn for balloon cloth or for other purposes. If, however, he should be unable to find a purchaser for the yarn, he was entitled to have it made into cloth and dispose of it in this way.

There is serious doubt, however, whether he would have been able to avoid loss in that way. Balloon cloth, according to plaintiff's testimony, would have sold at from 30 to 32 cents per yard, and each yard would require about one-fifth of a pound of the yarn, at a cost of 27 cents.

To get back any part of the cost of his yarn by weaving, the cost of weaving should have been less than the value of the cloth when woven. While there is evidence that the cost of the experimental weaving of the yarn in question was in excess of $1 per yard, and therefore impractical, there is no direct evidence of what the cost of weaving would have been had the yarn been of the quality warranted.

Mr. Swanson, of the Crompton Mills, testified that he wove 6 or 7 yards which took one weaver 15 hours, whereas with proper yarn the product should have been 20 or 21 yards. Assuming that $1 was three times too much, the weaving cost for good yarn would still have ex-

ceeded 30 to 32 cents a yard—the value of the cloth. As far as we can judge from this evidence, it would have been impractical to weave this yarn into cloth which would have been worth 30 to 32 cents, and thus dispose of it, even had it been in accordance with the warranty.

Upon the plaintiff's evidence we are left in doubt whether the yarn which he bought at $1.35 per pound, even had it been according to the warranty, was, in view of the market price of the cloth for which it was designed, of any value either for sale to other manufacturers for the making of that kind of cloth, or for conversion into cloth by having it woven for the plaintiff at his own expense.

It seems impossible upon the record to find whether the plaintiff's loss through acceptance of the goods was due to market conditions in which there was no demand for the yarn for manufacturing purposes even if good, or whether it was due to imperfections in the yarn.

[3] But irrespective of these difficulties in the plaintiff's case, we have to consider whether the plaintiff's delay in giving notice to the defendant of any claim for breach of warranty does not bar him from any right of action, and relieve the defendant from liability for breach of warranty.

Counsel for the United States relies upon the following provision in the Sales Act, which is in force both in Rhode Island, and in the state of New York (the goods were bought and sold in the City of New York):

"But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

See section 49 of the Uniform Sales Act (Uniform Laws, Annotated, Edward Thompson Co., 1922, book 1, pp. 180, 184, 189); Gen. Laws R. I. 1909. c. 263, § 9; New York Personal Property Law (Consol. Laws, c. 41), § 130.

Under this statute the burden is upon the plaintiff to prove notice within a reasonable time. Uniform Laws, Annotated, p. 186.

The yarn was delivered on June 7, 1920. The first notice to the seller of any claim for breach of warranty was on May 19, 1922, a year and 11 months after delivery. The plaintiff does not testify as to the date at which he first learned of any defects in the yarn.

If his failure to sell the yarn was due to any objection by customers to any of the defects of which he now complains, knowledge was brought home to him at that time.

Concerning his attempts to sell, the plaintiff testified as follows:

"Q. And what were the circumstances of that sale? Did you get much for that?
"A. No. At the time the Pennsylvania Textile Company was in very severe financial difficulties and could not get any credit of any kind, and we had this yarn on hand which we knew was very poor yarn and on which we knew we would have to take a very large loss, we therefore were willing to check on them for this yarn.
"Q. You mean by 'check them,' give them credit?
"A. Give them credit whereby, if it had been an ordinary production of goods that were all right, we wouldn't have considered them.

"Q. And you wouldn't have given them credit?

"A. Oh, no. As a matter of fact, since then they have gone out of business, and their biggest creditor has taken over the concern.

"Q. After that did you try to sell them any more yarn?

"A. Yes.

"Q. What was the result?

"A. They said they wouldn't buy any more of it for any price.

"Q. Did you offer them credit?

"A. We offered them any credit they wanted.

"Q. Did you try to sell this yarn to any other mill or any where else?

"A. I saw Mr. Rycroft at the Wamsutta Mill and told him I would ship him that yarn and I would bill it up on memorandum and that he could weave the yarn up and when he wove the yarn up, if he could weave it up, and had actually made it into goods and sold the goods and got his money for the yarn, that he could pay us.

"Q. Pay you how much?

"A. Oh, I told him any price—60 or 70 cents a pound. He said he had heard about the yarn, and while he would like to help us out he couldn't use it at any price.

"Q. He wouldn't accept your offer?

"A. No."

Though it appears that he then had knowledge of the quality of the yarn as very poor yarn, no date is given for these transactions. It appears, however, that prior to October 18, 1920, he made a decision that the best thing to do with the yarn was to try to have it woven into cloth.

October 18, 1920, he sent a beam of yarn to the Nield Mills in New Bedford. He was informed by Mr. Nield that they had a great deal of trouble in weaving the yarn. The test which terminated in December, 1920, was unsatisfactory. The sample piece of cloth was poor and was finally sold at 20 cents per yard.

If there was then any doubt as to whether the fault was in the yarn or in the weaver, the plaintiff should at once have taken steps to find out, and to give notice to the seller.

There is no evidence of any action by the plaintiff until March 25, 1921, when he shipped 7 beams to the Taber Mills, New Bedford, to be woven into cloth. The plaintiff requests a finding that this test terminated October 4, 1921—in other words, that it lasted more than 6 months. It seems highly improbable if defects in the yarn had developed during this period that they should not have come to plaintiff's knowledge much earlier than October 4, 1921.

By October 4, 1921, at the latest, the plaintiff was fully informed of facts upon which he now principally relies to prove a breach of warranty, yet no notice was given until over 7 months later, i. e. on May 19, 1922. The notice thus appears to have been given 1 year and 11 months after the delivery of the yarn, 1 year and 5 months after an unsatisfactory test at the Nield Mill, and 7 months after the final test at the Taber Mills.

No explanation is given for the delay in beginning the second test, or for the delay in notifying the seller after the second test.

Upon the undisputed facts I find it impossible to hold that notice was given within a reasonable time after the buyer knew or ought to have known of the breach.

The plaintiff's fifteenth request for findings is as follows:

"That the plaintiff gave the defendant notice of the breach of warranty of the yarn within a reasonable time after he knew or should have known thereof."

This request must be denied.

The defendant's twenty-ninth request is as follows:

"That the plaintiff did not give the defendant notice of the breach of warranty on which he has sued within a reasonable time after he knew or ought to have known of the existence of said breach."

This request must be granted.

I am of the opinion that plaintiff is barred by the statute from claiming damages for breach of warranty.

The plaintiff's requests for findings of fact numbered 1, 2, 3, 4, 5, 9, 10, 11 are granted; his fifteenth request is denied. His first request for finding of law is granted.

The defendant's requests for findings of fact numbered 9, 10, 19, 25, 26, 27, 28, 29 are granted, Nos. 1, 2, 3, 4, 5, 7, 8 are denied.

The defendant's first request for ruling of law is granted.

In view of the finding that under the statute the defendant is not liable for breach of warranty, even if such breach is proven, it seems unnecessary to rule upon the remaining requests for findings of fact and law. In case, however, either party shall desire a ruling on other requests, an application therefor may be filed on or before April 12, 1924.

Judgment will be for the defendant.